(80 N. W. Rep. 762.)

---

## SANFORD CANFIELD *vs.* JOHN ROBERTSON.

Opinion filed October 18, 1899.

**Compromise and Settlement—Evidence.**

> Evidence examined, and *held* that it appears to the satisfaction of this Court that a certain settlement of difference between the plaintiff and defendant, which is referred to at length in the opinion, was made, as a matter of fact.

Appeal from District Court, Pembina County; *Sauter,* J.

Action by Sanford Canfield against John Robertson. Judgment for plaintiff, and defendant appeals.

Reversed.

*Templeton & Rex* and *W. J. Burke,* for appellant.

*Bosard & Bosard* and *A. L. & T. A. Miller,* for respondent.

WALLIN, J. This is an action brought to recover back the sum of $1,100.93, with interest, which amount the plaintiff alleges that he paid to the defendant as an installment of the purchase price of certain lands in Pembina county, which lands the plaintiff claims

the defendant sold to him on or about the 22d day of March, 1892. The complaint alleges that the defendant has refused to apply said amount on the purchase price of said lands, and has also refused to transfer the title of the lands pursuant to the alleged agreement of purchase. The answer embraces a denial of the allegations of the complaint, and alleges that the defendant never contracted to sell to plaintiff the premises in question, but avers that defendant did have certain oral negotiations with plaintiff concerning a sale thereof, which negotiations were never completed, and which never ripened into a binding contract of sale. The answer further states that pending such negotiations the plaintiff entered upon the lands, and raised a crop thereon, in the year 1892, and that later in said year the plaintiff and defendant had a full settlement and accounting concerning all their business dealings with each other, including the matter of the land and the contemplated sale thereof, and that, as a part of said contract of settlement, 1,775 bushels of wheat and 250 bushels of barley (said grain being the one-half part of the crop raised in said year on said land by the plaintiff) were turned over to, and accepted by, the plaintiff, in full satisfaction of all of the plaintiff's rights, claims, and equities on account of said contemplated sale of said land or otherwise, and that as a part of said settlement the plaintiff agreed to surrender all of his rights, or supposed rights, in or to said land, and all of his claims to the crops or proceeds of the land, and all his claims and demands of every kind against the defendant, and that pursuant to such settlement the plaintiff abandoned the land, and gave it up to the defendant, who has ever since occupied and cultivated the same.

In the view which this Court has taken of the case, it is unnecessary to further notice the issues as made in the pleadings. The court below has found, and the fact is conceded by counsel, that no valid or enforceable agreement to sell the land was ever made between the plaintiff and defendant. While the parties were orally negotiating for a sale, and before the terms had all been agreed upon, the plaintiff went upon the land, doubtless believing that the contemplated sale would ripen into a written and legally binding contract of sale; and the evidence warrants the belief that such entry was made with the defendant's knowledge and consent. The plaintiff raised and harvested a crop upon the land in the year 1892, and during the process of threshing the grain, it is conceded, the parties had a settlement of some kind with each other; but counsel for plaintiff contend that such settlement did not embrace the question of the contemplated sale of the land, or of the resulting rights and equities growing out of the same, while defendant's counsel, on the contrary, contend that the settlement did embrace a general accounting between the parties, including the matter of the contemplated sale of the premises, and all rights growing out of the same. It is conceded that a division of the grain raised by plaintiff on the premises was amicably made between the parties while the grain

was being threshed, and that the plaintiff and defendant each received one-half of the crop, and that each retained such share; further, that the plaintiff, after such division, has never attempted or offered to continue the cultivation of the land. The plaintiff was a witness in his own behalf, and on cross-examination testified as follows: "After concluding the threshing, I took some of my wheat and put it in his granary, and settled things up,—I think, $45 worth of wheat,—and shook hands with him at the machine. I had nothing to do with the place after the threshing was done. Didn't care to stop. He put me off. He said he didn't want me there. I would have had a right there as soon as he signed the contract. I told him that at the time of the threshing, and before we shook hands." Another witness—one who was feeding the machine —testified that he saw Robertson and Canfield shake hands at that time, but could not hear them talking. The defendant testified in his own behalf, and stated repeatedly in his testimony that a settlement took place while the threshing was progressing, and that the same covered and included, with other minor matters not in dispute, the matter of the contemplated sale of the land. His testimony on this point was emphatic, and was reiterated with emphisis on both his direct and cross examination. Neither the plaintiff nor any other witness in plaintiff's behalf was recalled to rebut the very explicit testimony of the defendant as to the nature and scope of the settlement. It stands in this record wholly uncontradicted. All the testimony offered by plaintiff came from the plaintiff himself, and the same has been quoted in full. From this testimony we can gather no denial of the defendant's evidence which bears upon the vitally important matter of the settlement. On the contrary, the plaintiff's own evidence shows that the matter of the respective rights of the parties in the land had been discussed, or at least mentioned by the plaintiff, before the parties shook hands over the settlement which was made. The plaintiff said: "I would have had a right there as soon as he signed the contract. I told him that at the time of the threshing, and before we shook hands." Upon this testimony, we have no difficulty in reaching the conclusion that the parties to this action have voluntarily, and upon a sufficient consideration, adjusted and compromised all their differences growing out of the land deal, and the matters arising upon and incident thereto. Such settlement this Court has no right to disturb, and in this case it would seem that the parties have accomplished an adjustment of their dealings upon principles of abstract right and justice. The only question of fact found in this record which the parties desire this Court to review, or which can legally be re-examined upon the settled case, is that relating to the alleged settlement. Having decided that the settlement in fact took place, and was of the character and scope already stated, it will follow that the court below erred fundamentally in refusing to find that the settlement in fact occurred, and in entering judgment in favor of the plaintiff. The judgment of the court below will be reversed, and the trial

court directed to enter a judgment in favor of the defendant dismissing the action. The defendant will recover costs and disbursements of both courts. All the judges concurring.

Young, J., having been of counsel, took no part in the above case. *Fisk, J.,* of the First District, sitting by request.